**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Barry David GLICK, Defendant–
Appellee.**

No. 91–5505.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1991.

Decided Oct. 8, 1991.

As Amended Oct. 23, 1991.

Dale Preston Kelberman, Asst. U.S. Atty., Baltimore, Md., argued (Breckinridge L. Willcox, U.S. Atty., on brief), for plaintiff-appellant.

Nancy Luque, Washington, Perito & Dubuc, Washington, D.C., argued (Robert Plotkin, Anne Pings, on brief), for defendant-appellee.

Before SPROUSE and WILKINS, Circuit Judges, and JOSEPH F. ANDERSON, JR., District Judge for the District of South Carolina, sitting by designation.

## OPINION

WILKINS, Circuit Judge:

Barry David Glick pled guilty to interstate transportation of stolen property. 18 U.S.C.A. § 2314 (West Supp.1991). The sentencing court departed downward from the sentencing guidelines range on the bas-es of Glick's aberrant behavior and diminished capacity, and sentenced him to five years probation. The government appeals the downward departure. We reverse in part, affirm in part, and affirm as to the result.

I.

■ Prior to oral argument, Glick moved that I recuse myself because I presently serve as the Chairman of the United States Sentencing Commission. The motion is denied by a unanimous vote of the panel.

The Sentencing Reform Act requires that at least three of the seven members of the United States Sentencing Commission be federal judges. 28 U.S.C.A. § 991(a) (West Supp.1991). The Supreme Court has upheld the constitutionality of permitting federal judges to serve on the Commission. *Mistretta v. United States*, 488 U.S. 361, 397–408, 109 S.Ct. 647, 667–673, 102 L.Ed.2d 714 (1989).

In an earlier case involving the appeal of a sentence, Chief Judge Stephen G. Breyer, United States Court of Appeals for the First Circuit, and former member of the Sentencing Commission, *sua sponte* raised the question whether he should disqualify himself from hearing that appeal. *United States v. Wright*, 873 F.2d 437, 445 (1st Cir.1989) (Breyer, J., writing separately). Judge Breyer, who was extensively involved in the drafting and promulgation of the guidelines and policy statements that applied to the sentence in question, concluded that it would be proper for him to continue to participate in appeals in *"typical* Guidelines cases, unless they involve a serious legal challenge to the Guidelines themselves." *Id.* at 447 (emphasis in original). I agree.

A judge must recuse himself from a "proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a) (West Supp.1991). "The inquiry is whether a reasonable person would have a reasonable basis for · questioning the judge's impartiality...." *In re Beard*, 811 F.2d 818, 827 (4th Cir.1987). When there is no reasonable basis for questioning a judge's impartiality, it would be improper

for the judge to recuse himself. *See In re M. Ibrahim Khan, P.S.C.,* 751 F.2d 162, 164 (6th Cir.1984).

The United States Sentencing Commission promulgates guidelines and policy statements that have general application. The Supreme Court recognized in *Mistretta* that the promulgation of these guidelines "is an essentially neutral endeavor and one in which judicial participation is peculiarly appropriate." 488 U.S. at 407, 109 S.Ct. at 673. The Court also recognized that the fact "[t]hat federal judges participate in the promulgation of guidelines does not affect their or other judges' ability impartially to adjudicate sentencing issues." *Id.* at 406–07, 109 S.Ct. at 672. *Cf. Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946) ("The fact that this Court promulgated the rules [of civil procedure] as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency.").

Appellant argues that a judge-commissioner would have difficulty basing a decision on the text of the guidelines, commentary, and policy statements alone and that the knowledge of the guidelines promulgation process possessed by a judge-commissioner could improperly influence such a decision. Judges, however, are often called upon to compartmentalize their knowledge of information surrounding a case. For example, during a bench trial a judge is required to rule on the admissibility of evidence, and then to render a verdict without considering the inadmissible evidence. *See, e.g.,* Fed.R.Evid. 403. Importantly, in ruling on guidelines issues, a judge-commissioner, like all judges, is statutorily confined to "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C.A. § 3553(b) (West Supp.1991).

Appellant also questions the propriety of a judge deciding guidelines cases and simultaneously serving on the Commission because of the role a commissioner might play in subsequently amending the guidelines and policy statements. This possibility has no bearing on a judge's ability to be impartial. Any future amendment would have no effect on a defendant previously sentenced, except possibly to qualify the defendant for a sentence *reduction.* United States Sentencing Commission, *Guidelines Manual,* § 1B1.10, p.s. (Nov. 1990).

Because no special circumstances that would cause a reasonable person to question my impartiality are presented by this appeal, I shall not recuse myself. Indeed, because recusal is not required, I am obligated to participate.

II.

While working for Arbitron Company, Glick mailed an anonymous letter containing confidential information to Arbitron's principal competitor, A.C. Nielsen Company. Glick offered to become a consultant for Nielsen and suggested that Nielsen place an advertisement in a trade journal requesting information on Galapagos marine iguanas if Nielsen was interested in his proposal. Glick mailed three more letters containing similar confidential information during the next month. The Federal Bureau of Investigation, having been asked to investigate the communications, placed an advertisement in the trade journal as directed by Glick. Glick then mailed Nielsen a fifth anonymous letter containing more confidential information and offering equipment developed by Arbitron.

Glick had no previous convictions and stipulated in his plea agreement that his offense level was 18, which, combined with a criminal history category I, yielded a sentencing guidelines range of 27–33 months. At his sentencing hearing, Glick offered the testimony of a psychiatrist who had evaluated him and had concluded that Glick suffered from a significantly reduced mental capacity at the time he committed the offense and that his reduced mental capacity significantly contributed to his actions. The government elected not to present any testimony to refute the psychiatrist's conclusions. The sentencing court determined that a departure from the guidelines was warranted because of Glick's diminished capacity and because the

**338**

commission of this offense was aberrant behavior. The court sentenced Glick to five years probation with certain conditions.

## III.

The government contends that the sentencing court erred in finding that Glick was entitled to a departure sentence for either aberrant behavior or diminished capacity. When reviewing a departure sentence, this court will

> first examine *de novo* the specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." If the sentencing court identified one or more factors potentially warranting departure, we apply a clearly erroneous standard and review the factual support in the record for those identified circumstances. Upon ascertaining that there is an adequate factual basis for the factors, we apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside the Guidelines range "should result." Similarly, we apply an abuse of discretion standard to determine if the extent of departure was reasonable.

*United States v. Hummer*, 916 F.2d 186, 192 (4th Cir.1990) (quoting 18 U.S.C.A. § 3553(b) (West Supp.1990)) (citations omitted), *cert. denied*, —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991). The sentencing guidelines explicitly state that neither factor relied upon by the district court was considered by the Sentencing Commission when formulating the guidelines and either factor may be a ground for a departure sentence under appropriate circumstances. U.S.S.G., Ch. 1, Pt. A, 4(d), p.s. (departure permitted for "single acts of aberrant behavior"); U.S.S.G. § 5K2.13, p.s. (departure permitted for diminished capacity). Thus, our analytical review begins with whether

there is factual support in the record for each ground identified by the district court as justification for departure.

## A.

■ The government argues that Glick's offense does not constitute a single act of aberrant behavior as contemplated by the sentencing guidelines. Glick's conduct involved sending five separate letters containing misappropriated, confidential information over a course of ten weeks and devising a code to use in communicating through a national trade publication. Among items officers discovered in Glick's home were equipment stolen from Arbitron and a list of names and addresses of officers of Nielsen. The government contends that his attempt to remain anonymous indicates foresight, planning, and cognizance of the illicit nature of his activities.

Following congressional direction, the Sentencing Commission designed the guidelines to produce an appropriate sentence for a first offender. *See* 28 U.S.C.A. § 994(j) (West Supp.1991). Aberrant behavior, therefore, means something more than merely a first offense. A single act of aberrant behavior suggests "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable." *United States v. Carey*, 895 F.2d 318, 325 (7th Cir.1990). Because of the extensive planning, number of actions involved, and length of time over which Glick planned and perpetrated his offense, his actions do not constitute a single act of aberrant behavior. The district court erred in so concluding. *Cf. United States v. Sheffer*, 896 F.2d 842, 846 (4th Cir.) (no error in refusal to depart based on aberrant behavior where defendant was involved in a conspiracy spanning several years), *cert. denied*, —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 82 & —— U.S. ——, 111 S.Ct. 432, 112 L.Ed.2d 416 (1990).*

---

* We do not agree with the approach of the Ninth     Circuit that a series of actions calculated to

B.

The government also challenges the determination by the district court to depart on the basis of Glick's diminished capacity. A sentencing court may depart if it finds that "the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13, p.s. The sentencing court found that Glick met these criteria and we review this determination under a clearly erroneous standard. *Hummer,* 916 F.2d at 192. The record contains the testimony and written reports of a highly credentialed psychiatrist that indicate Glick was suffering from significantly diminished mental capacity. The government presented no evidence on the issue of Glick's mental capacity except a page from a textbook. While the government contends that the psychiatrist's testimony was not credible, the district court found to the contrary and we are not in a position to say otherwise. Based upon the record, we cannot say the finding by the district court that Glick suffered from diminished capacity is clearly erroneous.

Having concluded that the finding of diminished capacity is not clearly erroneous, we must consider whether the sentencing court abused its discretion in departing from the sentencing guidelines range on the basis of this factor. Diminished capacity need not be the sole cause of the offense to justify a departure, but should "comprise[ ] a contributing factor in the commission of the offense." *United States v. Ruklick,* 919 F.2d 95, 97–98 (8th Cir.1990). The psychiatrist testified without contradiction that "Glick had no conscious control over the things that were going on inside of him to a certain limit," and that the disorder from which he suffered impaired his ability to cope with stress so that "this led him to act out in this self destructive fashion." We find no abuse of discretion in the determination by the district court that a sentence below the applicable guide-

lines range should result because of Glick's diminished capacity.

we must determine whether the sentencing court abused its discretion in the extent of the departure. As noted, Glick's psychiatrist testified that Glick's diminished capacity contributed significantly to the commission of the offense. On the basis of this testimony, the sentencing court found that Glick was suffering from stress, "a personality disorder and some possible loss of contact with reality" that resulted in "significantly reduced mental capacity."

The extent of the departure should "reflect the extent to which reduced mental capacity contributed to the commission of the offense." U.S.S.G. § 5K2.13, p.s. Because we are governed on review of this issue by an abuse of discretion standard, *Hummer,* 916 F.2d at 192, we are constrained to leave the sentence undisturbed.

C.

Although the sentencing court based its departure upon two factors, this court should uphold the departure on the basis of one factor if "the proper factor[ ] justif[ies] the magnitude of departure." *United States v. Franklin,* 902 F.2d 501, 508 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990). *See also Hummer,* 916 F.2d at 195 n. 8 (suggesting departure sentence should be affirmed if proper factors support extent of departure, rather than automatic remand if any of the departure factors are found improper). However, if the proper factor would not support the extent of the departure, remand would be required for resentencing. We adopt the approach the First Circuit has applied in addressing this issue:

[A] departure which rests on a combination of valid and invalid grounds may be affirmed so long as (1) the direction and degree of the departure are reasonable in relation to the remaining (valid) ground, (2) excision of the improper ground does

further criminal misconduct can be classified as aberrant behavior. *United States v. Takai,* 930 F.2d 1427 (9th Cir.1991) (eight-day bribery con-

spiracy and bribery offer constituted single act of aberrant behavior).

not obscure or defeat the expressed reasoning of the district court, and (3) the reviewing court is left, on the record as a whole, with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence rightfully to be imposed.

*United States v. Diaz–Bastardo*, 929 F.2d 798, 800 (1st Cir.1991). It is clear from the record that disallowance of the aberrant behavior ground of departure does not defeat the reasoning of the sentencing court and that the extent of the departure would have occurred without reference to aberrant behavior. Therefore, the departure sentence must be affirmed.

### IV.

Having affirmed the departure sentence, we need not address the remaining issue raised by the government.

REVERSED IN PART, AFFIRMED IN PART, AND AFFIRMED AS TO THE RESULT.