**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

ERNEST F. COBLE, JR.,
        *Defendant-Appellee.*

No. 00-4247

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CR-99-137)

Argued: January 26, 2001

Decided: April 27, 2001

Before WILLIAMS and TRAXLER, Circuit Judges, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Reversed and remanded by unpublished per curiam opinion. Judge
Lee wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Harry L. Hobgood, Assistant United States Attorney,
Greensboro, North Carolina, for Appellant. James B. Craven, III,
Durham, North Carolina, for Appellee. **ON BRIEF:** Walter B. Hol-
ton, Jr., United States Attorney, Greensboro, North Carolina, for
Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Ernest Coble was convicted in the United States District Court for the Middle District of North Carolina of attempting to obstruct and impede the due administration of the tax laws, pursuant to 26 U.S.C.A. § 7212(a), for repeatedly seeking to rely upon an invalid "comptroller warrant" to discharge his tax liability and to receive a substantial tax refund from the Internal Revenue Service. At sentencing, the district court departed two levels downward, finding that Coble's conduct constituted a single act of aberrant behavior and that a combination of several discouraged factors, such as Coble's age and military service, justified departure. The Government appeals the district court's downward departure. We conclude that Coble's conduct did not constitute a single act of aberrant behavior and that the factors cited by the district court, either individually or in combination, are not present to an extraordinary degree so as to warrant departure. Accordingly, we reverse the district court's downward departure and remand for resentencing.

### I.

Coble, who is retired and in his 70s, is a former commercial airline pilot who served honorably in the military in two wars. Coble has had various problems with the IRS. On December 11, 1995, the IRS sent Coble a deficiency notice in the amount of $264,904.67. On December 20, 1995, Coble sent a letter to the IRS by certified mail containing a "comptroller warrant" for $529,808.00, or nearly twice the tax liability stated in a December 11, 1995 deficiency notice. Coble demanded that the IRS refund the difference and threatened to bill the IRS interest if it failed promptly to repay him. The comptroller warrant, as it turned out, was an invalid document sent to Coble by Leroy Schweitzer, head of the Freemen organization in Montana. The warrant was made payable jointly to Coble and the IRS.[1] After the IRS

---

[1]Schweitzer had sent these warrants, which have no financial value, to hundreds of people who had tax problems.

credited the warrant and the Federal Reserve rejected the warrant as worthless, the IRS removed the credit from Coble's account. (J.A. at 33, Appellant's Br. at 4.) Had the Federal Reserve honored the warrant, Coble would have received a $264,921.10 refund.

On February 1, 1996, IRS agent Bobby Shanks visited Coble to interview him about the warrant. Shanks informed Coble that the warrant was worthless, but Coble insisted that the warrant was valid and that he continued to expect the IRS to refund his money. On February 13, 1996, the IRS received a follow-up letter from Coble dated February 1, 1996, apparently written immediately after Shanks's visit. The letter referred to the IRS's refusal to honor the warrant and it demanded that the IRS accept the warrant as payment for Coble's tax liability. On February 20, 1996, the IRS received a second follow-up letter, dated February 14, 1996 and signed by Coble, again alleging that Coble's tax liability had been discharged as a result of the warrant. Attached to the letter was a copy of a previous deficiency notice, on which Coble had stamped "[r]efusal for cause without dishonor." (J.A. at 39.)

On September 23, 1999, Coble was convicted in the United States District Court for the Middle District of North Carolina of violating 26 U.S.C. § 7212(a) by attempting to obstruct and impede the due administration of the tax laws.[2] The Presentence Report (PSR)

---

[2]Section 7212(a), which applies to "[a]ttempts to interfere with administration of internal revenue laws," provides,

> (a) Corrupt or forcible interference. — Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

26 U.S.C.A. § 7212(a) (West 1989).

assigned Coble a total offense level of fourteen, which included a base offense level of twelve and a two-point enhancement for obstruction of justice based upon his inaccurate testimony concerning the date of Shanks's visit.[3] The district court declined to impose the two-point enhancement for obstruction of justice, finding that the inaccuracy was immaterial. (J.A. at 234.) The district court also departed downward by two levels, sentencing Coble to three years probation and six months of home confinement. The Government timely noted its appeal of Coble's sentence.

## II.

The only issue on appeal is whether the district court abused its discretion in departing downward. The district court relied upon two bases to depart downward: (1) that Coble's "mailing of the check in December 1995 was a single act of aberrant behavior, inconsistent with the defendant's conduct throughout his life, except in his ongoing battle with the [IRS]," (J.A. at 234) and (2) that a combination of several discouraged factors, such as age, employment record, community ties, and record of service, were present "to such an extraordinary degree that it is an atypical case to place the defendant in a position that he would be subject to an active sentence under the circumstances here."[4] (J.A. at 234-35.) We review the district court's decision to depart under the unitary abuse-of-discretion standard. *Koon v. United States*, 518 U.S. 81, 100 (1996). Legal errors and clearly erroneous factual findings constitute abuses of discretion. *See United States v. DeBeir*, 186 F.3d 561, 566-67 (4th Cir. 1999).

---

[3]At trial, Coble testified that Shanks visited him on March 3, 1996, rather than February 1, 1996.

[4]Although the Government argues that the district court erroneously departed on the basis of individual discouraged factors, such as age, the record shows that the district court rejected these factors as individual bases for departure and instead relied upon these factors only in combination. (*See* J.A. at 224-35 (explaining why departure was inappropriate based upon individual factors).)

### A. *Single Act of Aberrant Behavior*

The Sentencing Commission has noted that it "has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Pt. A, 4(d), p.s. (1998). Courts interpreting this policy statement have concluded that single acts of aberrant behavior may justify sentences below the guideline ranges. In *United States v. Glick*, 946 F.2d 335 (4th Cir. 1991), we set forth the standards for determining whether conduct constitutes a single act of aberrant behavior. In reversing the district court's departure, we stated that

> Aberrant behavior, therefore, *means something more than merely a first offense. A single act of aberrant behavior suggests a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable.* Because of the extensive planning, number of actions involved, and length of time over which Glick planned and perpetrated his offense, his actions do not constitute a single act of aberrant behavior. The district court erred in so concluding.

*Id.* at 338 (internal quotation marks and citation omitted and emphasis added).[5] Applying this standard to the present case, we cannot agree

---

[5]The Third, Fifth, Seventh, Eighth, Eleventh, and D.C. Circuits agree with our approach in *United States v. Glick*, 946 F.2d 335 (4th Cir. 1991). *See United States v. Winters*, 105 F.3d 200, 206-07 (5th Cir. 1997) (stating that aberrant behavior "requires more than an act which is merely a first offense or out of character for the defendant" (internal quotation marks omitted)); *United States v. Marcello*, 13 F.3d 752, 761 (3d Cir. 1994) ("Aberrant behavior must involve a lack of planning; it must be a single act that is spontaneous and thoughtless. . . ."). The First, Second, Ninth, and Tenth Circuits disagree, concluding that a "totality of the circumstances" approach is more appropriate, under which a wide variety of extenuating circumstances are considered. *See United States v. Grandmaison*, 77 F.3d 555, 563 (1st Cir. 1996) (holding that "determinations

that Coble's conduct constituted a single act of aberrant behavior that warrants a departure. The record reveals that Coble's conduct was not "a spontaneous and seemingly thoughtless act" but rather was "the result of substantial planning" and was "the result of a continued reflective process" rather than an impulsive act for which a defendant may arguably be less accountable. The act of sending the warrant reflects substantial planning and a lack of spontaneity on Coble's part because, in sending the warrant, Coble took the warrant, calculated his "refund," wrote a letter to the IRS to accompany the warrant, and then sent the warrant and letter by certified mail. Coble then sent additional correspondence dated February 1, 1996 (received by the IRS on February 13, 1996), and February 14, 1996 (received by the IRS on February 20, 1996), demanding that the Government honor his warrant notwithstanding the fact that Agent Shanks had already informed Coble on February 1, 1996 that the warrant had been dishonored.[6] Coble's acts of sending the letters, two months after sending the warrant and within days after Shank's visit, undermines the argument that his initial act of sending the warrant was the product of a thoughtless, aberrant moment based upon a misunderstanding of the warrant's validity, and demonstrates that additional time and reflection would not have deterred Coble from seeking to use the warrant to discharge his tax liability and obtain an improperly issued "refund."

---

about whether an offense constitutes a single act of aberrant behavior should be made by reviewing the totality of the circumstances," and that "spontaneity and thoughtlessness may also be among the factors considered, though they are not prerequisites for departure"); *United States v. Takai*, 941 F.2d 738, 743 (9th Cir. 1991) (affirming district court's decision to depart downward after finding that the defendants who pled guilty to bribery of and conspiracy to bribe an Immigration and Naturalization Service official, inter alia, received no pecuniary gain, had no criminal record, and had been influenced by a government agent). In *Glick*, we explicitly rejected the Ninth Circuit's view "that a series of actions calculated to further criminal misconduct can be classified as aberrant behavior." *See Glick*, 946 F.2d at 338 n.* (rejecting *Takai*).

[6]Although the letter dated February 1, 1996 apparently was sent the same day as Shank's visit, that letter referenced the fact that the warrant was dishonored. Thus, Coble presumably sent that letter after Shank's visit.

We therefore reject this basis for the district court's downward departure.

### B.   *Combination of Discouraged Factors*

The district court also relied upon a combination of discouraged factors to justify its downward departure. In particular, the district court identified physical condition or age, mental capacity, employment record, lack of criminal record for over 70 years, community ties and service to his country, single act of aberrant behavior,[7] and emotional toll arising from his battle with the IRS as factors that combined to warrant a downward departure. The district court conceded that none of these factors, considered singularly, warranted departure, but it concluded that these circumstances, in combination, were present "to such an extraordinary degree" that departure was appropriate. (J.A. at 234-35.)

The commentary to U.S.S.G. § 5K2.0 provides that

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

U.S.S.G. § 5K2.0, comment. Thus, under some circumstances, the district court is permitted to find that a combination of circumstances creates an extraordinary case sufficient to warrant a downward departure. *See DeBeir*, 186 F.3d at 573 ("[T]he Guidelines clearly contemplate that even if none of the factors at issue taken individually warrants a departure, the cumulative effect of all of the circumstances of the case may, in some instances, bring it outside the heartland.").

----

[7]As discussed above, we have already concluded that the district court misapplied the "single act of aberrant behavior" factor. We fail to see how the addition of a misapplied factor to the other factors adds anything to the equation.

In *Koon v. United States*, 518 U.S. 81 (1996), the Supreme Court set forth a multi-step analysis that courts must undertake in determining whether a departure is appropriate. *See id.* at 95-96. Under the *Koon* framework, the district court must impose a sentence within the guideline range unless it determines that individual facts present in the case take the case outside the "heartland" of typical cases embodied in the conduct covered by the applicable guideline. *See id.* at 92-95. Before departing, the sentencing court should determine whether the factor on which it is considering a departure has been forbidden, encouraged, discouraged, or unmentioned as a possible basis for departure by the Sentencing Commission. *See id.* at 95-96. Forbidden factors may never be grounds for departure.[8] If the factor being considered is a discouraged factor,[9] it may support a departure only if the court finds that it is present to such an extraordinary degree that it takes the case outside the heartland of ordinary cases encompassed by the guidelines. *Id.* Similarly, if a factor is encouraged but the applicable guideline takes it into account, then it may justify a departure only if it is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. Finally, as noted above, under the commentary to § 5K2.0, in an extraordinary case, a combination of factors which are "not ordinarily relevant" to a departure decision may cause the case to "differ[ ] significantly from the 'heartland' cases . . . in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case." U.S.S.G. § 5K2.0, comment. A departure would be possible in such a case, but such a case would be "extremely rare." *United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996).

Applying this framework to the present case, we first must determine whether the factors relied upon by the district court — physical

---

[8]Examples of forbidden factors include race, sex, national origin, creed, religion, socio-economic status, lack of guidance during youth, drug or alcohol dependence, and economic hardship. *See United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996).

[9]Examples of discouraged factors include family ties and responsibilities, education and vocational skills, and military, civic, charitable, or public service. *See United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996).

condition or age, employment record, lack of criminal record for over 70 years, community ties and service to his country, and emotional toll arising from his battle with the IRS — are discouraged, encouraged, or forbidden factors. Four of the factors — military service and public service; employment history; family ties and community ties; and emotional toll arising from his battle with the IRS — are discouraged factors. *See* U.S.S.G. § 5H1.1, p.s. (age);[10] § 5H1.11, p.s. (military service and public service); § 5H1.5 (employment record); § 5H1.6, p.s. (family ties and community ties).[11] Coble's clean criminal record for over 70 years is essentially the same as being a first time offender, which is a factor that is already considered by the guidelines. *See United States v. Sheffer*, 896 F.2d 842, 845 (4th Cir. 1990) ("In considering the criminal history of the defendant, the Sentencing Guidelines do take into account a defendant's status as a first-time offender."); *cf. Koon*, 518 U.S. at 111 ("We further agree with the Court of Appeals that the low likelihood of petitioners' recidivism was not an appropriate basis for departure. Petitioners were first-time offenders and so were classified in Criminal History Category I."). Thus, these factors are sufficient to support departure only if they are present to an extraordinary degree so as to take the case outside the heartland of ordinary cases encompassed by the guidelines.

Nothing in the record indicates that any of these factors, individually or in combination, are present to an extraordinary degree so as to warrant departure. The district court, in finding that the factors in combination presented an atypical case, did not articulate how Coble's situation was unusual, except to state that

---

[10]The policy statement provides that "[a]ge may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly then incarceration." U.S.S.G. § 5H1.1, p.s.

[11]To the extent that the district court relied upon the duress arising from the economic hardship imposed by the IRS liens, that is a forbidden factor. *See* U.S.S.G. § 5K2.12 (coercion and duress) (stating that "[t]he Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence").

> I don't think that there has been a federal court sentencing anyone with a fifteen to twenty-one month initial guideline for obstruction of the [IRS] that is 75 years old, with no criminal record, a combat pilot in two wars, a 747 captain and who has attempted to use the warrant to satisfy a lien against his property from the IRS, which even though arguably valid, he nevertheless believed to be invalid and improper, and I think you do sincerely believe that, even though you may well be seriously misguided in this case.

(J.A. at 237.)

Of the factors that the district court combined to justify departure, the district court explicitly refused to find that Coble was feeble and infirm or that he had diminished capacity (J.A. at 225 ("I think it would be less than honest for the Court to do something about being aged and infirmed in this case, as well as any diminished capacity type argument on the grounds at this time.").) As to the emotional toll arising from his battle with the IRS, that could hardly be deemed unusual because any defendant in a lengthy dispute with the IRS would presumably be subject to a similar emotional toll. *Cf. Koon*, 518 U.S. at 110 (finding an abuse of discretion in the district court's reliance upon Koon's career loss because "it is not unusual for a public official who is convicted of using his governmental authority to violate a person's rights to lose his or her job and to be barred from future work in that field"); *Rybicki*, 96 F.3d at 758 (reaching a similar conclusion with respect to firearm handler's deprivation of right to handle firearms or to vote). Thus, these factors fail to support a departure by themselves, and they do not come close to reflecting anything unusual about Coble's case.

We do not believe, on the record before us, that combining these factors with the remaining factors — employment record, lack of criminal record for over 70 years, community ties and service to his country — makes Coble's case exceptional. *Cf. Rybicki*, 96 F.3d at 758 (rejecting the district court's decision, in a case involving a similarly decorated veteran who was convicted of a non-violent crime, to depart downward on the basis of "the confluence" of several factors that, standing alone, were each insufficient to warrant departure).[12]

---

[12]In *United States v. Rybicki*, 96 F.3d 754 (4th Cir. 1996), the district court relied upon a combination of several factors, including that "Ryb-

None of the factors cited by the district court come close to being present to an exceptional degree and the district court failed adequately to explain how combining these factors makes them so. In other words, we simply do not agree that combining these factors causes Coble's case to fall within the "extremely rare" circumstances warranting departure as contemplated by the commentary to § 5K2.0. We therefore reverse the district court's decision to depart downward on the basis of the confluence of these factors because there is no indication that these factors, considered individually or jointly, are present to an exceptional degree so as to make Coble's case atypical.[13]

---

icki was a highly decorated Vietnam War veteran who had saved a civilian's life during the My Lai incident and had an unblemished record of 20 years of service to his country, both in the military and in the Secret Service." *Id.* at 758. We stated that

> Rybicki's 20 years of unblemished service to the United States and his responsibilities to his son and wife, both of whom have medical problems, are also factors that the Sentencing Guidelines have expressly addressed, instructing that they are ordinarily not relevant and therefore "discouraged." Because the record does not indicate that these factors are present to an "exceptional" degree, they may not form the basis for a downward departure.

*Id.* (internal citations omitted).

The commentary to § 5K2.0 became effective on November 1, 1994 and superseded our prior holding in *United States v. Goff*, 907 F.2d 1441, 1447 (4th Cir. 1990), that a combination of factors that did not independently warrant departure could not provide a basis for departure. Although the district court in *Rybicki* relied upon a combination of factors that did not independently warrant departure, we did not explicitly address the applicability of the commentary to § 5K2.0 in that case, and it is unclear whether Rybicki was sentenced before or after the effective date of the commentary. We nevertheless find *Rybicki* instructive, at least to the extent that Rybicki's military and public service, which, like Coble's, was extensive and distinguished, was considered a discouraged factor that was not present to an exceptional degree.

[13]Although the dissent suggests that the district court's decision to depart downward in this case is wholly insulated from review pursuant to *Koon v. United States*, 518 U.S. 81 (1996), we disagree. Indeed, we

III.

In conclusion, Coble's conduct was not a single act of aberrant behavior and the factors cited by the district court, both individually and in combination, are not present in an exceptional degree so as to make Coble's case atypical. Accordingly, we reverse the district court's downward departure and remand for resentencing.

---

have previously stated, in interpreting *Koon*, that "[w]hen a determination as to whether a factor is present to an exceptional degree merely amounts to an evaluation of a showing's adequacy, we review the district court's determination de novo to determine whether the district court abused its discretion." *United States v. Achiekwelu*, 112 F.3d 747, 756 (4th Cir. 1997); *see United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996) (stating that the evaluation of a showing's adequacy is a legal question subject to de novo review); *see also United States v. Barber*, 119 F.3d 276, 283 (4th Cir. 1997) (en banc) (stating that "the Court in *Koon* was quick to acknowledge, lest there be confusion on the point, that this standard would not shield erroneous legal conclusions from reversal.").

Here, the district court's conclusory "findings" fail adequately to explain how the combination of the several weak factors in this case aggregate to form an exceptional case justifying departure, and we therefore cannot agree that there has been an adequate showing that the combination of factors relied upon by the district court are present to an exceptional degree. We, of course, recognize the possibility, as explicitly left open by the Guidelines, that a district court may support a departure decision by aggregating several factors that, by themselves, would each be insufficient to justify departure. Thus, the dissent is correct that our analysis in *United States v. Goff*, 907 F.2d 1441 (4th Cir. 1990), no longer governs. But, as noted above, the Guidelines reserve this possibility for "extremely rare" cases, and we cannot see how a district court's use of mere conclusions can be sufficient to transform an otherwise unexceptional case into an "extremely rare" one as envisioned by the Guidelines. Indeed, we believe that accepting the dissent's view would effectively eviscerate our role in the appellate process by taking the appellate court out of the picture altogether no matter how scant, conclusory, or unsupported the district court's findings may be in support of departure. Although, as a district court judge, we can understand our dissenting colleague's interest in doing so, we respectfully decline to adopt that position here.

*REVERSED AND REMANDED*

LEE, District Judge, dissenting:

Coble was convicted of attempting to obstruct and impede the due administration of tax laws for sending a bogus "comptroller warrant" in an attempt to discharge his outstanding tax liability and to receive a refund. *See* 26 U.S.C.A. § 7212(a). The applicable Sentencing Guidelines range for Coble's offense was from 10 to 16 months. Judge Frank W. Bullock, Jr. considered the applicable guideline range, determined contested sentencing issues, and ultimately decided to depart downward from the applicable range of punishment. The district judge utilized his statutorily vested discretion to grant a downward departure based on the extraordinary presence of a combination of several factors including a single act of aberrant behavior,[1] community ties, military service, employment record, emotional condition, and age. The net effect of the district court's decision was to reduce the guideline range by two levels, and to allow the Court to place Coble on home electronic detention for six months with three years probation. Nonetheless, the majority holds that the district court abused its discretion because it found nothing exceptional about Coble's case which would warrant a downward departure. The majority substitutes its judgment for that of the district court, and makes a de novo determination of the merits of Coble's sentence departure. I respectfully dissent from the majority's holding because the standard which it utilizes to determine the merits of Coble's departure is in direct contradiction of the mandate of the United States Supreme Court and Congress.

The standard of review for the grant of a downward departure is abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 91 (1996). A district court abuses its discretion if it makes a legal error or a clearly erroneous factual finding. *See United States v. Debeir*,

---

[1] As acknowledged by the majority, the district judge also based his departure on the individual ground of a single act of aberrant behavior. However, this dissent will not address this point because sufficient grounds exist to uphold the district judge's decision on the combination of factors cited by the district judge which include a single act of aberrant behavior.

186 F.3d 561, 566-67 (4th Cir. 1999). When reviewing a grant of a downward departure, the appellate court must make a legal determination of "whether a factor is a permissible basis for departure under any circumstances." *Koon*, 518 U.S. at 100. This inquiry is entitled to little deference. *See id.* An appellate court must also determine whether the district court committed clear error in making its factual determination of "whether the misconduct that occurred in the particular instance suffices to make the case atypical." *Id.* In order to resolve this question, the appellate court must recognize that the district court utilizes its vantage point and day-to-day experience in making its assessment. *See id.* at 97. The district court's inquiry is entitled due deference because it embodies the traditional exercise of discretion by a district court. *See id.* at 98 (citing 18 U.S.C. § 3742(e)(4)).

The district court here did not abuse its discretion because it did not commit legal error nor did it make clearly erroneous factual findings when it decided to depart downward from the applicable Sentencing Guidelines. First, the district court properly employed the multi-tiered analysis mandated by *Koon*. *See Koon*, 518 U.S. at 95-96. The Court considered the applicable guideline range of punishment, considered a variety of discouraged factors and one encouraged factor, then concluded that this case was an atypical case warranting a frugal downward departure. The district court properly rendered factual findings that Coble's case presented a combination of factors to such an exceptional degree that it made the case atypical. (J.A. at 233-38.) The majority holds that the district court abused its discretion because the cited factors, neither individually nor in combination with each other, were not present to an exceptional degree to warrant departure. However, the majority's holding is flawed because it does not demonstrate how the district judge committed legal error or made clearly erroneous factual findings in combining a variety of factors.[2]

---

[2]The majority does not include a single act of aberrant behavior in its analysis of a combination of factors. The majority states that the district judge relied on a single act of aberrant behavior and a combination of separately distinct discouraged factors as two separate grounds for departure. However, a close look at the district judge's reasoning shows that he not only relied on a single act of aberrant behavior as an individual ground for departure, but he also relied upon a single act of aberrant behavior as a ground for departure in combination with Coble's age, lack of record, service to his country, employment record, and emotional confrontations with the IRS. (J.A. at 227, 234-35.)

The district judge did not commit legal error in relying on a combination of factors to grant a departure. The district judge relied upon a combination of one encouraged factor and five discouraged factors to arrive at his conclusion to depart from the Sentencing Guidelines. The Sentencing Guidelines permit a combination of these factors to serve as permissible grounds for departure if they present an atypical situation which takes the case out of the heartland of cases considered by the Sentencing Commission. *See* U.S.S.G. § 5K2.0, comment; *see generally United States v. Barth*, 2001 WL 117499, *4 (4th Cir. 2001); *Debeir*, 186 F.3d at 573. The district judge ruled that a combination of Coble's community ties, military service, employment record, emotional condition, age, and single act of mailing a bogus comptroller's warrant to the IRS were sufficient to place Coble's case outside of the heartland of cases contemplated by the Sentencing Commission, and thus warranted a downward departure. (J.A. 234-35.) The district judge acknowledged that several factors he considered, if viewed individually, would not be sufficient to merit a downward departure. Yet, when these factors are considered in combination a modest downward departure was warranted in Coble's case.

The district judge's findings were not clearly erroneous. The problem with the majority's consideration of this appeal is their flawed application of prior precedent which has been modified by the amendments to the Sentencing Guidelines. The majority utilizes the same analysis as that utilized in *United States v. Goff*, 907 F.2d 1441 (4th Cir. 1990) (holding that departure was not warranted based on combination of individually inadequate factors). In *Goff*, this Circuit reversed a district court's downward departure based on a combination of factors including the defendant's drug addiction, family ties, lack of profit from the venture, and the co-conspirator's lessor sentence. *See id*. at 1445-47. The *Goff* court looked at each individual factor, rejected each on its merits, then stated that

> the district court also departed because it believed that all the specific bases mentioned above combine in totality as being matters which had not been adequately taken into account by the Sentencing Commission. . . . Viewing the factors cumulatively adds nothing significant to the calculus.

> Therefore, the decision of the district court to depart was unreasonable.

*Id.* at 1447 (internal quotations omitted).

In 1994, the amended Sentencing Guidelines superceded the *Goff* decision by allowing for departure for a combination of factors which alone would not be a permissible basis for departure. *See* U.S.S.G. § 5K2.0, comment; *Debeir*, 186 F.3d at 573. Nonetheless, the majority utilizes a *Goff*-type analysis which parses the district court's ruling into a broken prism. The majority (a) looks singularly at Coble's single act of aberrant behavior, age, military service, and emotional tolls arising from Coble's battle with the IRS, (b) states why each factor is insufficient, (c) then makes a blanket assertion that the district court abused its discretion because these factors combined with his employment record, lack of criminal record for 70 years, and community ties, were not present to an exceptional degree to warrant departure. The majority's analysis blatantly disregards the mandate of *Koon* and the amended Sentencing Guidelines.

The United States Supreme Court in *Koon* ruled that "Congress allows district courts to depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission.'" *See Koon*, 518 U.S. at 92 (citing 18 U.S.C. § 3553(b)). Several factors mentioned by the Sentencing Guidelines may combine to create mitigating or aggravating circumstances sufficient to warrant a basis for departure. *See generally Debeir*, 186 F.3d at 573. Consistent with *Koon*, the district court properly found the combination of permissible factors placed the case outside of the heartland of cases contemplated by the Sentencing Guidelines. The district court examined a variety of factors and found Coble to be a 75-year-old man who had no criminal record, served as a combat pilot in two wars, employed as a commercial airline captain, had strong family ties, and whose sole offense was to attempt to use a bogus comptroller's warrant to satisfy a tax lien against his property. The district judge stated that in his 17 years of sentencing, he did not think that there has been a federal court who sentenced anyone with Coble's characteristics within the initial guideline range. (J.A. at 237.) In his institutional experience, Coble's case was outside of the

heartland of cases contemplated by the guidelines and some departure was warranted. The district judge's considerable sentencing experience and familiarity with other tax cases are crucial to understanding why the judge departed in this case.

At sentencing, the district judge exercised considerable restraint and integrity in announcing his ruling. He acknowledged that he could exercise his discretion and grant an undeserved "acceptance of responsibility" three level departure from the applicable offense level and such a ruling would be almost "appeal proof." (J.A. at 237.) Instead, he considered his experience with tax cases and stated that, in 17 years, he had not seen anyone sentenced to a lengthy term of incarceration for this offense where the defendant had Coble's unique personal characteristics.

The district judge's decision to depart two levels, a frugal two levels, embodied the traditional permissible exercise of discretion in sentencing. *See Koon*, 518 U.S. at 98. District courts have an institutional advantage and vantage point over appellate courts in comparing factors because district courts see so many more Sentencing Guideline cases than do appellate courts. *See Koon*, 518 U.S. at 98 (acknowledging that in 1994 approximately 94% of Guidelines cases were not appealed); *United States v. Hairston*, 96 F.3d 102, 106 (4th Cir. 1996) (acknowledging the institutional advantage of district court in determining sentences). The district judge's findings of fact concerning specific circumstances of a case are important because it permits the flexibility necessary for a defendant to be appropriately sentenced when his case involves unique and unusual facts. *See Koon*, 518 U.S. at 99. *See*, *e.g.*, *United States v. Reilly*, 178 F.3d 1288 (4th Cir. 1999) (unpublished) (upholding district court's eleven level departure on the grounds of post-offense rehabilitation after the district court made extensive factual findings). The majority sweeps aside Judge Bullock's 17 years of institutional wisdom and casts a fleeting glance at *Koon*'s acknowledgment that Congress allows a district court to depart from the applicable Guideline range if the district court finds atypical mitigating circumstance not adequately taken into consideration by the Sentencing Commission. *See Koon*, 518 U.S. at 91. In sum, the majority makes a de novo determination that if it were in the district court's position, it would have decided the case differently. Under *Koon*, an appellate court should reverse a district court's

decision if the district court abuses its discretion, not if it disagrees with the district court's decision. *See*, *e.g.*, *United States v. Goodman*, 2001 WL 273143, *2-3 (4th Cir. 2001) (unpublished) (applying the standard in *Koon* and holding that, even though it was a very close case, the court cannot conclude that the district court abused its discretion in departing downward). The majority's decision comes without the benefit of the trial judge's sentencing experience or impression of the testimony presented at Coble's trial.[3] The majority's position is completely at odds with the mandate of *Koon* to review a downward departure from the Sentencing Guidelines for an abuse of discretion.

The district court did not abuse its discretion in finding Coble's case was atypical. The Sentencing Guidelines structure sentencing in a way that adds predictability to the sentencing process. In drafting these guidelines, the Sentencing Commission could not possibly contemplate every type of circumstance conceivable in sentencing. There is still room for individualized consideration of the whole person within the framework of the Sentencing Guidelines. Coble is a recalcitrant tax evader, a 75-year-old man, who had no criminal record, served as a combat pilot in two wars, has strong family ties, and had a good employment record as a commercial airline captain. Coble was convicted because he attempted to use a bogus comptroller's warrant to satisfy a tax lien. The population of offenders possessing Coble's offense and other characteristics is small, and indeed, rare. The district judge could find no case which factually compared to Coble's case in his 17 years experience, and decided to impose a frugal two level downward departure from the applicable Sentencing Guidelines which allowed him to place Coble in home electronic detention for six months and on probation for three years. I respectfully dissent because the district court did not abuse its discretion in this case and I would affirm the district court's judgment.

---

[3]This appeal follows a contested trial and sentencing hearing where the Government did not succeed at an attempt to link Coble to a group which is notorious for promoting tax evasion schemes. The Government could not prove that Coble was a member of the group or an adherent to the group's wide ranging criminal activities.